UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:19-cv-1052 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ALLIANCE SHIPPERS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER DENYING PLAINTIFF'S
MOTION TO REMAND (Doc. 8)**

This civil case is before the Court on Plaintiff Total Quality Logistics, LLC ("TQL")'s motion to remand (Doc. 8) and the parties' responsive memoranda (Docs. 10, 11). For the reasons stated below, Plaintiff's motion is **denied**.

**I.     BACKGROUND**

TQL, a freight brokerage and third-party logistics company, filed the instant action in the Clermont County Court of Common Pleas against former employee, James Rehak, and his new employer, Alliance Shippers, Inc. ("Alliance Shippers"), alleging that Rehak violated his non-compete agreement with TQL by leaving to work for Alliance Shippers—a competitor. (Doc. 3 at 2-3). The complaint seeks damages and preliminary and permanent injunctive relief, alleging breach of contract claims against Rehak, misappropriation of trade secrets against Rehak and Alliance Shippers, and tortious interference with a contract against Alliance Shippers. (*Id.* at ¶¶ 39-67).

On December 11, 2019, Defendant Alliance Shippers, with the consent of Rehak, removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1). Following removal, Plaintiff filed an amended complaint limiting the damages sought to less than $75,000 (Doc. 6) and moved to remand on the basis that the amended complaint clarifies that the amount in controversy does not exceed the jurisdictional threshold. (Doc. 8).

Plaintiff's original complaint states separately for Count 1 (breach of contract), Count 3 (misappropriation of trade secrets), and Count 4 (tortious interference with a contract) that TQL seeks "damages in an amount to be determined at trial in excess of $25,000." [1] (Doc. 3 at ¶¶ 45, 61, 67). The prayer for relief repeats that TQL seeks compensatory damages "in an amount in excess of $25,000" for each of Counts 1, 3, and 4. (*Id.* at 13).

Plaintiff's amended complaint states generally that "the amount in controversy exceeds $25,000 <u>but is not greater than $75,000 inclusive of compensatory damages, punitive damages, attorney's fees, and injunctive relief</u>." (Doc. 6 at ¶ 13) (emphasis added). The amended complaint repeats under Counts 1, 3, and 4 that "TQL has suffered past and future damages in an amount to be determined at trial in excess of $25,000 but not more than $75,000." (*Id.* at ¶¶ 45, 61, 67). At the close of the amended complaint, the prayer for relief reiterates TQL's request for compensatory damages "in excess of $25,000 but not more than $75,000, inclusive of any award of punitive damages,

---

[1] Count 2 of the original and amended complaint seeks injunctive relief based on TQL's breach of contract claim. (*Id.* at ¶¶ 46-50; Doc. 6 at ¶¶ 46-50).

2

attorney's fees and injunctive relief" and similarly requests punitive damages "in an amount of not more than $75,000, inclusive of any award of compensatory damages, attorney's fees, and injunctive relief." (*Id.* at 13).

## II.     ANALYSIS

Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between citizens of different states. 28 U.S.C. § 1332(a)(1). A party may remove an action from state court when the federal court to which the action is removed would otherwise have had original jurisdiction. 28 U.S.C. § 1441(a). When a plaintiff's complaint seeks an unspecified amount of damages, the removing party has the burden of establishing that the amount in controversy requirement is met by a preponderance of the evidence. *Halsey v. AGCO Corp.*, 755 F. App'x 524, 526 (6th Cir. 2018). "[T]he removal statute should be strictly construed and all doubts resolved in favor of remand." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014) (quoting *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)).

### A.     Plaintiff's attempt to limit damages

Because the plaintiff is considered the master of his complaint, "the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy." *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 469 (6th Cir. 2019) (quoting *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000)). In addition, whether a federal court has jurisdiction is determined at the time of removal. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007). Thus, ordinarily, "a

3

post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court." *Heyman*, 781 F. App'x at 469 (quoting *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000)).

However, "[a] plaintiff may stipulate [post-removal] to a claim less than the federal jurisdictional amount 'where a plaintiff provides specific information about the amount in controversy *for the first time* . . . .'" *Shupe*, 566 F. App'x at 481 (quoting *Egan v. Premier Scales & Sys.*, 237 F. Supp. 2d 774, 778 (W.D. Ky. 2002)). This is in recognition that certain states, including Ohio, do not permit plaintiffs to include a specific claim for damages in the complaint. *See* Ohio Civ. R. 8(A) ("If the party seeks more than twenty-five thousand dollars, the party shall so state in the pleadings but shall not specify in the demand for judgment the amount of recovery sought . . . .").

Accordingly, when a plaintiff stipulates to less than the jurisdictional amount after removal, and when that stipulation is the first specific piece of information concerning the amount of controversy, courts consider such a stipulation to be a *clarification* rather than a *reduction* of the amount of recovery sought. *Heyman*, 781 F. App'x at 469-70 (citing *Egan*, 237 F. Supp. 2d at 778). Yet, "only unequivocal statement[s] and stipulation[s] limiting damages will serve this purpose." *Shupe*, 566 F. App'x at 481 (quoting *Egan*, 237 F. Supp. 2d at 778). "An actual limitation on the amount of a potential judgment is essential to any such stipulation." *Id.*

In the instant case, Plaintiff seeks remand based on its amended complaint, which it claims provides specific information regarding damages for the first time and clarifies that the damages sought are less than $75,000, inclusive of compensatory damages,

4

punitive damages, injunctive relief, and attorney's fees. (Doc. 8 at 5). In response, Defendants argue that the amended complaint is not the first instance in which Plaintiff has provided specific information concerning the amount of damages sought. Defendants point to a statement by TQL contained in a brief filed in a prior lawsuit involving TQL and Alliance Shippers that Rehak generated at least $74,098 in profit after moving to Alliance Shippers. (Doc. 10 at 4). In light of Plaintiff's prior statement, combined with the fact that Plaintiff is seeking injunctive relief and punitive damages, Defendants' position is that Plaintiff's amended complaint impermissibly seeks to *change* the amount of damages sought rather than to clarify damages for the first time. (*Id.* at 5). However, Plaintiff's attempt to remand fails for a more fundamental reason—Plaintiff's amended complaint does not constitute an unequivocal limitation on damages.

In *Heyman*, the Sixth Circuit, in an unpublished opinion, found that a plaintiff's complaint requesting damages "not to exceed $75,000" did not constitute an unequivocal limitation on damages because such a statement would not be binding in state court. 781 F. App'x at 469-70. In that case, the complaint stated that plaintiff was seeking "all available damages including an amount of money sufficient to satisfy his claims (not to exceed $75,000) inclusive of pre- and post-judgment interest, attorneys' fees and costs, including the cost of any experts, and any other and further relief as the Court deems appropriate." *Id.* at 467. In denying the plaintiff's motion to remand, the court reasoned that the statement was not unequivocal, because under Kentucky law, a statement in a complaint limiting damages to less than $75,000 "is insufficient to affirmatively establish that the amount in controversy requirement for diversity jurisdiction cannot be met." *Id.*

5

at 470 (citing *Cook v. Estate of Moore*, No. 3:12-cv-485, 2012 WL 5398064, at *1 (W.D. Ky. Nov. 2, 2012)); *see also id.* at 470 (noting that under Kentucky Rule of Civil Procedure 54.03, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings*.") (emphasis added).

Application of Ohio law leads to the same result—the language in Plaintiff's amended complaint does not unequivocally limit damages to below the federal jurisdictional threshold. Like the Kentucky pleading rules, Ohio law prevents a plaintiff from indicating the amount of damages sought in the complaint other than to inform that the amount exceeds the minimum necessary to establish jurisdiction of the state court. *See* Ohio Civ. R. 8(A) ("If the party seeks more than twenty-five thousand dollars, the party shall so state in the pleadings but shall not specify in the demand for judgment the amount of recovery sought . . . ."). Further, like in Kentucky, Ohio courts may award a plaintiff damages above the amount a plaintiff requested in the complaint. *Eversole v. Deutsche Bank Nat'l Trust Co.*, No. 12-cv-1901, 2012 WL 8887637, at *5 (N.D. Ohio Oct. 16, 2012); Ohio Civ. R. 54(C) ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered, even if the party has not demanded the relief in the pleadings.").

Thus, TQL's attempt to cap damages to less than the federal jurisdictional amount by asserting that it seeks "not more than $75,000" inclusive of compensatory damages, punitive damages, attorney's fees, and injunctive relief, would not have its intended effect in state court. (Doc. 6 at 13); *see Heyman*, 781 F. App'x at 470 (collecting cases

6

finding statement unequivocal when plaintiff stipulates that he <u>will not seek or accept</u> damages over $75,000); *see also Shupe*, 566 F. App'x at 481 ("An actual limitation on the amount of a potential judgment 'is essential to any such stipulation.'") (quoting *Egan*, 237 F. Supp. 2d at 778). Accordingly, remand is not warranted based on Plaintiff's amended complaint.[2]

### B. Amount in controversy

Nevertheless, Defendants must meet their burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000. This requires Defendants to show that it is "more likely than not" that if successful, Plaintiff's damages would exceed $75,000. *Heyman*, 781 F. App'x at 470-71 (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993)). This test "does not place upon the defendant the daunting burden of proving, *to a legal certainty*, that the plaintiff's damages are not less than the amount-in-controversy requirement[, yet] [s]uch a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Id.* (quoting *Gafford*, 997 F.2d at 159). Because jurisdiction is assessed at the time of removal, the Court must assess the allegations contained in Plaintiff's original complaint. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001).

---

[2] As pointed out by Plaintiff, in *Total Quality Logistics, LLC v. Navajo Express, Inc.*, this Court previously found that an amended complaint specifying that damages sought did not exceed $75,000 warranted remand under *Shupe*. No. 1:18-cv-230, 2018 WL 2001434 (S.D. Ohio Apr. 30, 2018). However, the Court finds the recent guidance from the Sixth Circuit in *Heyman* persuasive, and thus, reaches a different conclusion here.

Plaintiff's original complaint alleges that Rehak's last day working for TQL as a freight broker was in April 2017, and that he immediately began working for Alliance Shippers in the same role, in violation of his non-compete agreement with TQL. (Doc. 3 at ¶¶ 4-6). The complaint, filed on November 12, 2019, further alleges that Rehak continues to work at Alliance as a broker, and there is no indication in the record that he has since ceased his employment with Alliance. (*Id.* at ¶ 8). The complaint also states that the third-party logistics industry is "extremely competitive" and that TQL "spends a great deal of time, money, and other resources developing relationships with new customers" and "devlop[ing] and protect[ing] the secrecy of its proprietary systems, processes, and procedures . . . ." (*Id.* at ¶ 19).

Based on these facts, Plaintiff asserted three separate causes of action: breach of contract against Rehak for violating his non-compete agreement, misappropriation of trade secrets against Rehak and Alliance Shippers, and tortious interference with a contract against Alliance Shippers. (*Id.* at 9-12). For each of these three claims, Plaintiff sought damages "in an amount to be proven at trial in excess of $25,000." (*Id.* at ¶¶ 45, 61, 67).

Plaintiff also sought punitive damages with respect to the misappropriation of trade secrets claim, alleging that Defendants' misuse of TQL's trade secrets was willful and malicious. (*Id.* at ¶ 59, 13). "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Heyman*, 781 F. App'x at 471 (quoting *Hayes*, 266 F.3d at 572). Under Ohio law, punitive damages up to three

8

times any award of compensatory damages are available for the "willful and malicious" misappropriation of trade secrets. R.C. § 1333.63(B); *see Sunkin v. Hunter Eng'g Co.*, No. 5:15-cv-892, 2015 WL 4406101, at *4 (N.D. Ohio July 20, 2015).

Moreover, the complaint requested preliminary and permanent injunctive relief enjoining Rehak from working for Alliance for a period of one year, soliciting TQL's customers, and misappropriating TQL's trade secrets. (*Id.* at 13). To establish the value of a non-compete agreement, courts "will usually look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." *Transtar Indus., LLC v. Lester*, No. 1:19-cv-1230, 2019 WL 2410855, at *2 (N.D. Ohio June 7, 2019) (quoting *Absolute Mach. Tools, Inc. v. Clancy Mach. Tools, Inc.*, 410 F. Supp. 2d 665 (N.D. Ohio 2005)). Courts may also look to "the value of plaintiff's lost revenue, the value of the future effect of a defendant's reach upon all the plaintiff's other contracts with its sales agents, and the value of trade secrets and confidential information acquired by the defendants during their employment." *Absolute Mach. Tools, Inc.*, 410 F. Supp. 2d at 669 (quoting *Basicomputer Corp. v. Scott*, 791 F. Supp. 1280, 1286 (N.D. Ohio 1991)). In addition, "the 'costs of complying with an injunction . . . may establish the amount-in-controversy." *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006)).

Finally, Plaintiff's complaint sought attorney's fees with respect to Count 1 and Count 2, as provided for in Rehak's non-compete agreement with TQL, as well as Count 3 pursuant to the Ohio Uniform Trade Secrets Act. (Doc. 3 at 13). Generally, "attorneys'

9

fees are excludable in determining the amount in controversy for purposes of diversity, *unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees.*" *Heyman*, 781 F. App'x at 473 (quoting *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007)). Rehak's non-compete agreement states that if an employee is found to have violated the terms of the agreement, the employee "shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL." (Doc. 3-1 at 7). In addition, § 1333.64 of the Ohio Uniform Trade Secrets Act permits courts to award attorney's fees to the prevailing party where willful and malicious misappropriation exists. Thus, Plaintiff appears eligible for attorney's fees based on the non-compete agreement and the Uniform Trade Secrets Act.

Defendants' notice of removal asserts that Plaintiff's demand for over $25,000 in compensatory damages for each of Counts 1, 3, and 4 in the complaint, combined with Plaintiff's request for punitive damages, injunctive relief, and attorney's fees, puts the amount in controversy over $75,000. (Doc. 1 at 2-3). In response, Plaintiff asserts that Defendants improperly add up the compensatory damages for each of the separate Counts, noting that the damages sought for each claim are "largely the same." (Doc. 8 at 5). However, even assuming Plaintiff recovers in excess of $25,000 in compensatory damages, adding on punitive damages—allowable up to three times the amount of compensatory damages—leads to a total of more than $75,000. *See Sunkin*, 2015 WL 4406101, at *4.

Taking into account the value of the injunctive relief and attorney's fees, in addition to compensatory and punitive damages, the Court to finds that Plaintiff's

damages more likely than not exceed the jurisdictional threshold. Courts may consider evidence, including information from prior lawsuits, to assess the amount in controversy. *See Hahn Auto-Owners Ins. Grp.*, No. 3:04-cv-380, 2006 WL 2796479, at *2 (E.D. Tenn. Sept. 27, 2006) (instructing that courts "should look at prior lawsuits between the parties, if any; should look at awards in similar lawsuits between other parties; should consider any other evidence the defendant may have; and should exercise its common sense") (quoting *Graham v. Champion Intern. Cop.*, 1997 WL 33487768 at *3 (E.D. Tenn. May 16, 1997)).

Here, Defendants have pointed to a prior lawsuit brought by TQL against Alliance Shippers and another defendant (not Rehak). (Doc. 10 at 4). More specifically, Defendants assert that TQL's brief in support of its motion for summary judgment in that case stated that "TQL has confirmed at least . . . $74,098.00 [in profit] from Rehak while brokering for Alliance." (*Id.*). While the $74,098 figure is not necessarily an exact measure of the injunctive relief TQL seeks, it is probative of that value, which would also include the value of TQL's trade secrets. Thus, adding together the potential compensatory and punitive damages, the value of the injunctive relief sought, and the potential for attorney's fees, the Court finds that Defendants have met their burden of showing that the jurisdictional amount has been met by a preponderance of the evidence.

### C. Technical jurisdictional defect

As a limited liability company, TQL has "the citizenship of each partner or member" for purposes of diversity jurisdiction. *See Southwell v. Summit View Farragut, LLC*, 494 F. App'x 508 (6th Cir. 2012) (quoting *Delay v. Rosenthal Collins Grp., LLC*,

11

585 F.3d 1003, 1005 (6th Cir. 2009)). Defendant's statement in the notice of removal that TQL "is a citizen of Ohio" is insufficient to establish complete diversity, as it does not identify the citizenship of all entities composing of the limited liability company. (Doc. 1 at 2); *Id.* Rather than remand based on this technical deficiency, Defendants are ordered to show cause as to why the case should not be remanded for lack of diversity. *See Micro Elecs., Inc. v. 10VOX Entm't, LLC*, No. 2:10-cv-943, 2011 WL 534295, at *1-2 (S.D. Ohio Jan. 11, 2011) (permitting defendants to cure deficient statement of diversity in notice of removal for limited liability corporation pursuant to 28 U.S.C. § 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts").[3]

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion to remand (Doc. 8) is **DENIED**. Defendants shall submit a supplemental jurisdictional statement concerning the citizenship of TQL by **July 1, 2020**, at which time the Court will address Defendant Alliance Shippers' motion to transfer venue (Doc. 7).

**IT IS SO ORDERED.**

Date: June 15, 2020   *s/ Timothy S. Black*
Timothy S. Black
United States District Judge

---

[3] While Plaintiff did not raise this issue, the Court has an independent obligation to ensure subject-matter jurisdiction exists. *See United States v. $525,695.24*, 869 F.3d 429, 433 (6th Cir. 2017) (citing *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 359 (6th Cir. 2006)).

12