UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:19-cv-1052 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| ALLIANCE SHIPPERS, INC., *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT'S
MOTION TO TRANSFER VENUE TO THE
NORTHERN DISTRICT OF ILLINOIS (Doc. 7)**

This civil action is before the Court on the motion of Defendant Alliance Shippers, Inc. ("Defendant" or "Alliance Shippers") to transfer this action to the Northern District of Illinois for further proceedings (Doc. 7), and the parties' responsive memoranda (Docs. 9, 12).[1]

**I.    PROCEDURAL POSTURE**

On June 15, 2020, this Court entered an Order denying the motion of Plaintiff Total Quality Logistic, LLC ("TQL") to remand to state court, finding that the amount in controversy exceeds the jurisdictional requirements under 28 U.S.C. §1332(a)(1). (Doc. 15). In that decision, the Court directed Defendant Alliance Shippers to submit a supplemental jurisdictional statement concerning the citizenship of TQL in order to establish diversity jurisdiction. (*Id.* at 11–12). Alliance Shippers subsequently filed a

---

[1] Defendant James Rehak does not oppose Defendant Alliance Shipper's motion to transfer venue.

supplemental jurisdictional statement showing that all of TQL's partners and members are citizens of Ohio. (Doc. 16 at 2). *See Southwell v. Summitview Farragut, LLC*, 494 F. App. 508 (6th Cir. 2012) (find that a limited liability company has "the citizenship of each partner or member" for purposes of diversity jurisdiction). As Defendant Alliance Shippers is a citizen of New Jersey and Defendant James Rehak is a citizen of Illinois (*see* Doc. 16 at 2), complete diversity exists between the parties. Accordingly, this Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and that this civil action was properly removed pursuant to 28 U.S.C. §§ 1332 and 1441.

## II. FACTUAL BACKGROUND

TQL provides freight brokerage and third-party logistics services to customers across the continental United States. (Doc. 6 at ¶ 2). Defendant James Rehak became employed at TQL on or about December 7, 2015. (*Id.* at ¶ 23). Rehak was a broker at TQL. (*Id.* at ¶ 2). Rehak worked for TQL in or near their Chicago, Illinois location. (Doc. 7 at 3). Rehak's last day with TQL was on April 5, 2017. (Doc. 6 at ¶ 33). Rehak accepted a position as a broker with Alliance Shippers at their Orland Park, Illinois location after leaving TQL. (*Id.* at ¶ 34; Doc. 7 at 3). TQL alleges that Alliance Shippers is a direct competitor of TQL. (Doc. 6 at ¶ 35).

Prior to his employment, Rehak signed the "Employee Non-Compete, Confidentiality And Non-Solicitation Agreement" (the "NCA") with Total Quality Logistics, LLC Illinois. (Doc. 6-1). Generally, the NCA prohibited Rehak from working with a competing business, soliciting any TQL customers, or interfering with any contractual relationship anywhere in the United States for one-year. (Doc. 6 at ¶ 27).

Rehak also agreed to not disclose or use any of TQL's confidential information. (*Id.* at ¶ 28). Rehak also agreed that the NCA's geographic, duration, and content restrictions are reasonable. (*Id.* at ¶ 29). The NCA states that it "shall be interpreted and enforced under the laws of the State of Ohio, and any action, suit or proceeding with respect to or arising out of this [NCA] shall be brought in the Court of Common Pleas, Clermont County, Ohio or the United States District Court for the Northern District of Illinois." (*Id.* at ¶ 31, Doc 6-1 at ¶ 10).[2]

TQL brings this action against Rehak, and Alliance Shippers alleging that Rehak violated his non-compete agreement with TQL by leaving to work for Alliance Shippers. The complaint seeks damages and preliminary and permanent injunctive relief, alleging breach of contract claims against Rehak, misappropriation of trade secrets against Rehak and Alliance Shippers, and tortious interference with a contract against Alliance Shippers. (Doc. 6 at ¶¶ 39-67).

Defendant Alliance Shippers moves to transfer this action to the Northern District of Illinois. (Doc. 7). The motion is ripe for review

### III. STANDARD OF REVIEW

Section 1404(a), which governs change of venue, provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district

---

[2] Plaintiff's Amended Complaint conveniently omits the language in the forum selection clause relating to the Northern District of Illinois.

3

or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) sets forth a two-step inquiry: (A) whether the case could have been brought in the transferee court; and (B) whether the proposed transfer is convenient and just. *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012).

The moving party bears "the burden of establishing the need for a transfer of venue." *Id*. The district court has the broad discretion to determine whether a transfer of venue is proper. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

## IV. ANALYSIS

### A. Northern District of Illinois

As an initial matter, it is clear that this case could have been brought in the Northern District of Illinois. "An action 'might have been brought' in a transferee court if: (1) the [transferee] court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Collaborative Sys. Grp. v. Grove*, No. 1:10cv543, 2012 WL 12926048, at *1, 2012 U.S. Dist. LEXIS 195814, at *2 (S.D. Ohio Jan. 18, 2012) (citing *Sky Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000)). Upon review of the Amended Complaint and the parties' filings, each of these requirements is satisfied. The parties do not dispute that this matter could have been brought in the Northern District of Illinois (Docs. 9 at 2; 12 at 2), and the Court agrees. Therefore, the Court must determine whether the public and private interests favor transfer of venue.

### B. Private Interests

Courts consider the following factors when determining whether the parties' private interests favor transfer of venue:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 63, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). "The most important factor in ruling upon a motion to transfer under 28 U.S.C. § 1404(a) is the convenience of witnesses." *Odom Indus., Inc. v. Diversified Metal Prod., Inc.*, No. 1:12-CV-309, 2012 WL 4364299, at *16 (S.D. Ohio Sept. 24, 2012) (citing *Walnut Private Equity Fund v. Hauser Capital Partners*, No. 1:11cv770, 2011 U.S. Dist. LEXIS 138884, at *39, 2011 WL 6013000 (S.D. Ohio Dec. 2, 2011). Here, the private interests favor transfer to the Northern District of Illinois.

First, Defendant argues that the private interests favor transfer of venue because Rehak's work for both TQL and Alliance took place in their locations in or near Chicago, Illinois, therefore witnesses, operative facts, and sources of proof reside in Illinois (Doc. 7 at 3). Defendant notes that in a recent similar case brought by TQL in Clermont

County Court of Common Pleas against one of Rehak's coworkers,[3] seven of eight witnesses called at trial reside in Illinois. (Doc. 12 at 3). The only witness called at that trial who did not reside in Ohio was TQL's company representative, Mark Bostwick. (*Id.*). TQL contends that it could call Ralph Lee, a former TQL employee who countersigned Rehak's NCA, as a witness. Lee is a non-party who resides in Ohio. Plaintiff notes that "[i]t is the convenience of non-party witnesses, rather than employee witnesses ... that is the more important factor and is accorded greater weight." *Brown Co. of Waverly, LLC v. Superior Roll Forming, Inc.*, No. 1:09-CV-802, 2009 WL 4251093, at *3 (W.D. Mich. Nov. 25, 2009). Yet Defendant contends that potential witnesses would also include former employees at TQL's Illinois office (where Rehak worked), who could also be non-party witnesses. Thus, the Court agrees with Defendant that, to the extent either party may need to call willing or compel unwilling witnesses, those persons are more likely to reside in Illinois.

    Plaintiff provides several reasons that private interests disfavor transfer. First TQL notes that it is headquartered in the Southern District of Ohio, along with most of its records relevant to this case and its likely corporate representative. (Doc. 9 at 3). While records may be stored at TQL's Ohio headquarters, the Court agrees with Defendant that in an era of electronic records, transferring files digitally should not be inconvenient for Plaintiff.

---

[3] *See Total Quality Logistics v. Alliance Shippers, Inc.*, Clermont C.P. No. 2017 CVH 00524, *4 (Oct. 4, 2019). Plaintiff references this litigation and attach the state court's decision to their brief in opposition to the motion to transfer venue. (Doc. 9-1).

Second, TQL points out that Rehak used a company-provided telephone number the a "513" area code to solicit customers. The Court finds that the area code of Rehak's work phone number has no impact on the private interest analysis.

Third, Rehak's communications would have been routed through TQL's servers and stored at its Clermont County headquarters. (Doc. 9 at 3). Again, the Court finds that where Rehak's communications were routed has no impact on the private interest analysis. It is clear here that the nexis of events giving rise to this dispute occurred in Illinois, not Ohio, and that the majority of likely witnesses reside in Illinois, not Ohio.

Ultimately the Court finds that convenience of the witnesses—the most important factor in the Court's analysis under § 1404(a)— and the parties clearly favors transfer of this matter to the Northern District of Illinois.

**C. Public Factors**

Courts consider the following factors when determining whether the public interest favors transfer of venue: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const.*, 571 U.S. at 63 n.6 (quoting *Piper Aircraft*, 454 U.S. at 241, n. 6). The Court will address each of these factors in turn.

**1. Court Congestion**

First, court congestion slightly favors transferring this matter to the Northern District of Illinois. Defendant correctly notes that the 2019 *Federal Court Management*

*Statistics*[4] show that the median time from filing to disposition in civil cases was 41.6 months in the Southern District of Ohio and only 7.4 months in the Northern District of Illinois. (Doc. 12 at 5). Yet the *2020 Federal Court Management Statistics*[5] show that as of June 30, 2020, the median time from filing to disposition in civil cases was 9.8 months in the Southern District of Ohio and 11.2 months in the Northern District of Illinois. Yet the June 30, 2020 judicial caseload statistics show that 948 civil cases had been filed per judge over the previous year in the Southern District of Ohio, while 394 civil cases had been filed per judge in the Northern District of Illinois. Therefore, the docket congestion analysis shows that the docket of the Southern District of Ohio is generally more congested than that of the Northern District of Ohio, so on that factor, the public interest slightly favors transferring venue to the Northern District of Illinois.

### 2. Local Interest

The local interest in having localized controversies decided at home does not weigh strongly in favor of either venue. Plaintiff correctly notes that "Ohio has a strong interest in resolving suits brought by its residents and has a substantial interest in seeing that its residents get the benefit of their bargains. *Odom*, 2012 WL 4264299, at *17. Moreover, "Ohio has a strong interest in cases where the defendant's tortious conduct has caused damages to an Ohio resident, as alleged here." *Id.* Yet, as Defendant notes, Ohio has no connection to the causes of action actually asserted in the Amended Complaint.

---

[4] The 2019 Report can be accessed at
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf.
[5] The 2020 report can be accessed at
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf

8

(Doc. 12 at 5–6). Defendant Rehak was employed in TQL's Illinois office. Rehak now works in Alliance Shippers Illinois office. TQL seeks to enforce the NCA against Rehak in Illinois. None of the conduct alleged in the Amended Complaint occurred in Ohio. Therefore, as both Illinois and Ohio have an interest in this controversy, this factor does not weigh in favor of either party.

### 3. Governing Law

The interest in having the trial of a diversity case in a forum that is at home with the law favors transferring this case to the Northern District of Illinois.

Plaintiff argues that Ohio law applies here because the NCA states that it "shall be interpreted and enforced exclusively under the laws of the State of Ohio." (Doc. 6-1 at PAGEID# 160). Ohio law permits choice-of-law contractual clauses to be enforced unless:

> (a) the chosen state law has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to the fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [Restatement (Second) of Conflicts § 188 (1971) ], would be the state of the applicable law by the parties.

*Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 338–39 (1983) (quoting Restatement (Second) of Conflicts § 187 at 561 (1971)).

Defendant argues that Illinois law applies under paragraph 2(b) of § 187 of the Restatement. Therefore, the Court must determine whether (1) application of Ohio law would be contrary to the fundamental policy of Illinois and whether Illinois has a

9

materially greater interest than that of Ohio and (2) whether Illinois would be the state of the applicable law in the absence of a choice by the parties. *See Schulke*, 6 Ohio St. 3d at 436 ("application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties.").

First, as Defendant points out (*see* Doc. 12 at 8–9), the Illinois Attorney General has repeatedly emphasized that Illinois disfavors overbroad non-compete agreements. *See* Press Release, Illinois Attorney General, Attorney General Madigan reaches settlement with WeWork to end use of overly broad non-competes (Sept. 18, 2018) (accessed electronically at http://www.illinoisattorneygeneral.gov/pressroom/2018_09/20180918.html). Indeed, in a recent suit related to an allegedly overbroad non-compete, the Illinois Attorney General wrote:

> The Attorney General believes this action to be in the public interest of the citizens of the State of Illinois and brings this lawsuit pursuant to Section 7(a) of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(a) and her common law authority to pursue actions in *parens patriae* to preserve the economic well-being of Illinois residents and businesses impacted by Defendants' unlawful conduct. Here, Defendants' actions affect a substantial segment of the residents of Illinois, including individuals directly impacted by these non-competition agreements and the general public, who suffer the indirect impact of decreased employee mobility and restraint of trade. Illinois businesses also suffer from the use of unreasonable and unenforceable noncompetition agreements, including by limiting the pool of available workers. The State has an interest in preventing such undue economic limitations . . . . Further, Illinois law also recognizes that the unreasonable restraint of trade or commerce by contract is an offense against state law and public policy.

*People v. Jimmy John's Enterprises, Inc.*, 2016-CH-07746 Circuit Court of Cook County, Chancery Division at ¶ 5 and ¶71.

Here, Court finds that Illinois has a greater interest than Ohio in enforcing non-compete agreements that restrict commerce and employment inside of Illinois, and that applying Ohio law would be contrary to Illinois' fundamental policy.

Second, it is clear here that Illinois law would apply in the absence of the choice-of-law provision in the NCA. "It is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract." *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 44, 487 N.E.2d 568 (1986). As Defendant aptly summarizes "Rehak is an Illinois resident; the contract was presented to Rehak in Chicago, Illinois; and Rehak at all times worked for TQL in Chicago, Illinois." (Doc. 12 at 7). The contract was made in Illinois and Rehak performed under the contract in Illinois. Absent the Ohio choice-of-law provision, Illinois law would apply.

Accordingly, pursuant to the Restatement (Second) of Conflicts § 187 ¶ 2(b), Illinois law is applicable here and therefore public interest favors transferring to the Northern District of Illinois. While this Court's review of this issue finds that Illinois law likely applies to this dispute, even if the Northern District of Illinois ultimately finds that Ohio law applies, that court is well-equipped to analyze Ohio law.

Therefore, overall the public interest factors strongly favor transferring this matter to the Northern District of Illinois.

### D. Plaintiff's Choice of Forum

The Court recognizes that "plaintiff's choice of forum is to be given considerable weight and the balance of convenience, considering all of the relevant factors, should be strongly in favor of a transfer before such will be granted." *Hanning v. New England Mut. Life Ins. Co.*, 710 F.Supp. 213, 214 (S.D. Ohio 1989) (citing *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)). "A plaintiff's choice of forum, however, is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court." *Jamhour*, 211 F. Supp. 2d at 947. Here, Plaintiff did not choose the Southern District of Ohio because it filed this matter in Clermont County Court of Common Pleas, "therefore, Plaintiff's choice of forum, while relevant to the issue of transfer, is not entitled to the substantial weight that it otherwise might receive." *Id*. Moreover, in the NCA drafted by TQL, TQL did include the Northern District of Illinois as a proper forum, so that provides weight to the fact that transfer of venue to the Northern District of Illinois will not burden or inconvenience Plaintiff.

Accordingly, Defendant's motion is well-taken. In its broad discretion, the Court finds that the public and private interests strongly favor transferring this civil action to the Northern District of Illinois.

### IV. CONCLUSION

Based upon the foregoing, Defendant Alliance Shipper's motion to transfer venue to the Northern District of Illinois (Doc. 7) is **GRANTED**. This action is hereby **TRANSFERRED** to the United States District Court for the Northern District of Illinois.

**IT IS SO ORDERED.**

Date: 9/28/2020

*s/Timothy S. Black*
Timothy S. Black
United States District Judge